Filed 9/11/23  In re Z.P. CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re Z.P., a Person Coming Under the Juvenile Court Law. | |
| STANISLAUS COUNTY COMMUNITY SERVICES AGENCY, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> S.P., <br><br> Defendant and Appellant. | F086047 <br><br> (Super. Ct. No. JVDP-20-000126) <br><br> **OPINION** |

### THE COURT[*]

APPEAL from an order of the Superior Court of Stanislaus County.  Annette Rees, Judge.

Laura D. Pedicini, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Boze, County Counsel, and Sophia Ahmad, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

---

[*]     Before Levy, Acting P. J., Detjen, J. and DeSantos, J.

# INTRODUCTION

S.P. (mother) appeals from the juvenile court's orders after a combined Welfare and Institutions Code section 388 and 18-month status review hearing concerning her son, Z.P. (born August 2015).[1] She contends the Stanislaus County Community Services Agency (agency) and the juvenile court failed to comply with the inquiry requirements of the Indian Child Welfare Act (25 U.S.C. § 1901 et seq.) (ICWA) and related California law because extended family members were not asked about Z.P.'s Indian ancestry before the agency sent notice to the tribes.[2] The agency concedes that "several extended relatives were not queried about ICWA, [but] disagrees that this constituted a lack of due diligence or cast doubt on the reliability of the finding that ICWA did not apply."

Consistent with our decisions in *In re K.H.* (2022) 84 Cal.App.5th 566 (*K.H.*) and *In re E.C.* (2022) 85 Cal.App.5th 123 (*E.C.*), we conclude "the error is prejudicial because neither the agency nor the court gathered information sufficient to ensure a reliable finding that ICWA does not apply and remanding for an adequate inquiry in the first instance is the only meaningful way to safeguard the rights at issue. ([*In re* ]*A.R.* [(2021)] 11 Cal.5th [234,] 252–254 [(*A.R.*)].) Accordingly, we conditionally reverse the juvenile court's finding that ICWA does not apply and remand for further proceedings consistent with this opinion, as set forth herein." (*K.H.*, at p. 591; accord, *E.C.*, at pp. 157–158.)

---

[1] All further statutory references are to the Welfare and Institutions Code.

[2] "[B]ecause ICWA uses the term 'Indian,' we do the same for consistency, even though we recognize that other terms, such as 'Native American' or 'indigenous,' are preferred by many." (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 739, fn. 1.)

## FACTUAL AND PROCEDURAL BACKGROUND[3]

### Petition and Detention

On September 8, 2021, the agency filed a petition on behalf of Z.P. pursuant to section 300, subdivisions (b)(1) and (g). The petition did not list a father, nor was one listed on Z.P.'s birth certificate. The petition contained an Indian Child Inquiry Attachment (ICWA-010(A)) form stating the agency had been unable to conduct an ICWA inquiry with mother because they had not been unable to contact her.

The detention report stated ICWA did or could apply. An ICWA inquiry had not been made with mother as the agency had been unable to contact her. However, in Z.P.'s prior 2020 dependency case, mother reported Blackfeet and Cheyenne ancestry. A Notice of Child Custody Proceeding for Indian Child (ICWA-030) form had been filed in August 2020 in that case, but the case was dismissed before an ICWA determination could be made.

On September 9, 2021, mother filed a Parental Notification of Indian Status (ICWA-020) form and stated one or more of her parents, grandparents, or other lineal ancestors is or was a member of the Cheyenne and Blackfeet tribes. That same day the juvenile court held a detention hearing and made an ICWA inquiry with mother. The court found ICWA could apply. Additionally, the court found a prima facie case had been established and ordered Z.P. detained.

### Jurisdiction and Disposition

The agency's jurisdiction report stated ICWA did or could apply. The report stated that on the date of the detention hearing, mother claimed Cheyenne and Blackfeet ancestry. That same day, a social worker spoke with a maternal aunt who stated she did not believe anyone in the family was a registered member or eligible for membership in

---

**3** Because the sole issue on appeal concerns ICWA, we restrict our facts to those bearing on that issue or helpful for clarity.

any tribe.  The following day, the agency called maternal grandfather, but was unable to reach him and contact was never made.  The agency reported it was preparing an ICWA-030 notice with the information mother provided.

On October 12, 2021, the agency filed the ICWA-030 form indicating it had sent notice to the Bureau of Indian Affairs, three Cheyenne tribes, and the Blackfeet tribe. The notice only included information for maternal grandparents and both sets of maternal great-grandparents.  No uncles, aunts, siblings, cousins, or other family members were listed.  Instead, the agency noted, "NO INFORMATION AVAILABLE."  Paternal information was not included because the father was unknown.[4]  It should be noted that by this time, the agency had already been in contact with at least adult sibling E.P., maternal aunt A.P.,[5] and maternal cousin K.R.  The agency also had contact information for maternal uncle M.H. and maternal grandfather but had been unable to reach them.

The agency's disposition report reiterated the same information from the jurisdiction report.

On December 9, 2021, the juvenile court held a combined jurisdiction and disposition hearing.  The court found the allegations true, ordered Z.P. detained, ordered mother to participate in reunification services, and set a six-month review hearing.

**Six-Month Status Review**

The agency's status review report stated ICWA could apply.  The Bureau of Indian Affairs, the Blackfeet tribe, and two of the three Cheyenne tribes stated Z.P. was not ICWA eligible.  The third Cheyenne tribe's response was still pending.  The agency noted it was making efforts to get father's information as one tribe was requesting it for a more detailed search.

---

[4]     On October 18, 2021, the agency filed an amended ICWA-030 reflecting a change in the combined jurisdiction and disposition hearing.

[5]     The agency had also spoken to an unidentified maternal aunt for ICWA purposes, but it is unclear if it is the same aunt A.P.

On June 3, 2022, the agency filed a "Motion for Determination of ICWA Applicability," stating it had received an acknowledgment letter from the Bureau of Indian Affairs and letters from all four tribes it noticed saying Z.P. was not ICWA eligible. On June 6, 2022, the juvenile court conducted a six-month status review hearing where it found ICWA did not apply, continued reunification services, and set a 12-month review hearing.

**12-Month Status Review**

The agency's status review report stated the juvenile court previously found ICWA did not apply. On December 6, 2022, the court held the 12-month review hearing, continued reunification services, and set an 18-month status review hearing.

**Combined 18-Month Status Review and Section 388 Hearing**

Mother had filed a "Request to Change Order" (JV-180) regarding progressing visits. On March 27, 2023, the juvenile court denied mother's JV-180, terminated mother's reunification services, and set a section 366.3 hearing.

On April 4, 2023, mother filed a notice of appeal.

## DISCUSSION

I. **ICWA**

A. **Legal Principles**

" 'ICWA is a federal law giving Indian tribes concurrent jurisdiction over state court child custody proceedings that involve Indian children living off of a reservation' [citations], in furtherance of 'federal policy " 'that, where possible, an Indian child should remain in the Indian community' " ' [citations]. 'ICWA establishes minimum federal standards, both procedural and substantive, governing the removal of Indian children from their families' [citations], and '[w]hen ICWA applies, the Indian tribe has a right to intervene in or exercise jurisdiction over the proceeding.' " (*K.H.*, *supra*, 84 Cal.App.5th 566, 594, fn. omitted; accord, *E.C.*, *supra*, 85 Cal.App.5th at p. 138, fn. omitted.)

" 'In 2006, California adopted various procedural and substantive provisions of ICWA.' [Citations.] The Legislature's 'primary objective … was to *increase* compliance with ICWA. California Indian Legal Services (CILS), a proponent of the bill, observed that courts and county agencies still had difficulty complying with ICWA 25 years after its enactment, and CILS believed codification of [ICWA's] requirements into state law would help alleviate the problem.' " (*K.H.*, *supra*, 84 Cal.App.5th at p. 595; accord, *E.C.*, *supra*, 85 Cal.App.5th at pp. 138–139.)

" 'In 2016, new federal regulations were adopted concerning ICWA compliance. [Citation.] Following the enactment of the federal regulations, California made conforming amendments to its statutes, including portions of the Welfare and Institutions Code related to ICWA notice and inquiry requirements. [Citations.] Those changes became effective January 1, 2019 .…' [Citation.] Subsequently, the Legislature amended section 224.2, subdivision (e), to define 'reason to believe,' effective September 18, 2020." (*K.H.*, *supra*, 84 Cal.App.5th at pp. 595–596, fn. omitted; accord, *E.C.*, *supra*, 85 Cal.App.5th at p. 139.)

### 1. Summary of Duties of Inquiry and Notice

"[W]hether a child is a member, or is eligible for membership, in a particular tribe is a determination that rests exclusively with the tribe, and neither the agency nor the court plays any role in making that determination. [Citations.] ' "Because it typically is not self-evident whether a child is an Indian child, both federal and state law mandate certain inquiries to be made in each case." ' " (*K.H.*, *supra*, 84 Cal.App.5th at p. 596; accord, *E.C.*, *supra*, 85 Cal.App.5th at pp. 139–140.)

"In California, section 224.2 'codifies and elaborates on ICWA's requirements of notice to a child's parents or legal guardian, Indian custodian, and Indian tribe, and to the [Bureau of Indian Affairs].' " (*In re A.R.* (2022) 77 Cal.App.5th 197, 204.) California law imposes "an affirmative and continuing duty [on the court and the county welfare

agency] to inquire whether a child for whom a petition under [s]ection 300, … may be or has been filed, is or may be an Indian child."  (§ 224.2, subd. (a).)

"The [state law] duty to inquire begins with the initial contact, including, but not limited to, asking the party reporting child abuse or neglect whether the party has any information that the child may be an Indian child."  (§ 224.2, subd. (a).)  "If a child is placed into the temporary custody of a county welfare [agency] pursuant to [s]ection 306 … the county welfare [agency] … has a duty to inquire whether that child is an Indian child.  Inquiry includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled."  (§ 224.2, subd. (b).)  Additionally, "[a]t the first appearance in court of each party, the court shall ask each participant present in the hearing whether the participant knows or has reason to know that the child is an Indian child.  The court shall instruct the parties to inform the court if they subsequently receive information that provides reason to know the child is an Indian child."  (§ 224.2, subd. (c).)

"If the initial inquiry provides 'reason to believe' that an Indian child is involved in a proceeding—that is, if the court or social worker 'has information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe'—then the court or social worker 'shall make further inquiry' regarding the child's possible Indian status as soon as practicable."  (*In re Ezequiel G.* (2022) 81 Cal.App.5th 984, 999 (*Ezequiel G.*), citing § 224.2, subd. (e).)  "Further inquiry 'includes, but is not limited to, all of the following:  [¶] (A) Interviewing the parents, Indian custodian, and extended family members[;] [¶] (B) Contacting the Bureau of Indian Affairs and the State Department of Social Services[; and] [¶] (C) Contacting the tribe or tribes and any other person that may reasonably be expected to have information

7.

regarding the child's membership, citizenship status, or eligibility.' " (*Ezequiel G.*, at p. 999.)

"If there is 'reason to know' a child is an Indian child, the agency shall provide notice to the relevant tribes and agencies in accordance with section 224.3, subdivision (a)(5)." (*Ezequiel G.*, *supra*, 81 Cal.App.5th at p. 999, citing § 224.2, subd. (f).) "There is 'reason to know' a child is an Indian child if any one of six statutory criteria is met—i.e., if the court is advised that the child 'is an Indian child,' the child's or parent's residence is on a reservation, the child is or has been a ward of a tribal court, or either parent or the child possess an identification card indicating membership or citizenship in an Indian tribe." (*Ezequiel G.*, at p. 999, citing § 224.2, subd. (d).)

County welfare agencies "must on an ongoing basis include in its filings a detailed description of all inquiries, and further inquiries it has undertaken, and all information received pertaining to the child's Indian status, as well as evidence of how and when this information was provided to the relevant tribes. Whenever new information is received, that information must be expeditiously provided to the tribes." (Cal. Rules of Court, rule 5.481(a)(5).)[6]

### B. Standard of Review

"The juvenile court's finding that ICWA does not apply to the proceeding rests on two elemental determinations, 'subject to reversal based on sufficiency of the evidence.' " (*K.H.*, *supra*, 84 Cal.App.5th at p. 601, quoting § 224.2, subd. (i)(2); accord, *E.C.*, *supra*, 85 Cal.App.5th at pp. 142–143.) First, "[t]he court must find there is 'no reason to know whether the child is an Indian child,' which is dependent upon whether any of the six circumstances set forth in subdivision (d) of section 224.2 apply." (*K.H.*, at p. 601, quoting § 224.2, subd. (i)(2); accord, *E.C.*, at p. 143.) Second, "[t]he juvenile

---

[6]     All further references to rules are to the California Rules of Court.

court must … find a 'proper and adequate further inquiry and due diligence .…' " (*K.H.*, at p. 601, quoting § 224.2, subd. (i)(2); accord, *E.C.*, at p. 143.)

Under the substantial evidence standard, " 'a reviewing court should "not reweigh the evidence, evaluate the credibility of witnesses, or resolve evidentiary conflicts." [Citation.] The determinations should "be upheld if … supported by substantial evidence, even though substantial evidence to the contrary also exists and the trial court might have reached a different result had it believed other evidence." ' [Citations.] The standard recognizes that '[t]rial courts "generally are in a better position to evaluate and weigh the evidence" than appellate courts' [citation], and 'an appellate court should accept a trial court's factual findings if they are reasonable and supported by substantial evidence in the record' [citation]. '[I]f a court holds an evidentiary hearing, it may make credibility determinations, to which an appellate court would generally defer.' " (*K.H.*, *supra*, 84 Cal.App.5th at p. 601; accord, *E.C.*, *supra*, 85 Cal.App.5th at p. 143.)

The juvenile court's finding on the second element, however, "is ultimately discretionary because it requires the juvenile court to 'engage in a delicate balancing of' various factors in assessing whether the agency's inquiry was proper and adequate within the context of ICWA and California law, and whether the agency acted with due diligence." (*K.H.*, *supra*, 84 Cal.App.5th at p. 601, quoting *In re Caden C.* (2021) 11 Cal.5th 614, 640; accord, *E.C.*, *supra*, 85 Cal.App.5th at p. 143; *Ezequiel G.*, *supra*, 81 Cal.App.5th at pp. 1004–1005.) Therefore, we employ a hybrid standard and review the court's determination for substantial evidence and abuse of discretion. (*K.H.*, at p. 601; accord, *E.C.*, at pp. 143–144; *Ezequiel G.*, at pp. 1004–1005.)

" 'Review for abuse of discretion is subtly different [from review for substantial evidence], focused not primarily on the evidence but the application of a legal standard. A court abuses its discretion only when " ' "the trial court has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination." ' " [Citation.] But " ' "[w]hen two or more inferences can reasonably be deduced from the

9.

facts, the reviewing court has no authority to substitute its decision for that of the trial court[.]" ' " [Citations.] [¶] While each standard here fits a distinct type of determination under review, the practical difference between the standards is not likely to be very pronounced.' " (*K.H.*, *supra*, 84 Cal.App.5th at p. 602; accord, *E.C.*, *supra*, 85 Cal.App.5th at pp. 143–144.)

"Review of the juvenile court's findings under the foregoing standards is deferential, but ' "an appellate court [nevertheless] exercises its independent judgment to determine whether the facts satisfy the rule of law." ' [Citations.] Where the material facts are undisputed, courts have applied independent review to determine whether ICWA's requirements were satisfied." (*K.H.*, *supra*, 84 Cal.App.5th at p. 602; accord, *E.C.*, *supra*, 85 Cal.App.5th at p. 144.)

### C. Analysis

#### 1. Summary of ICWA Inquiry and Notice

In the present case, mother claimed ancestry with the Blackfeet and Cheyenne tribes. At the detention hearing the juvenile court conducted an inquiry and found ICWA could apply. The agency spoke to an unidentified maternal aunt who stated she did not believe the family had Indian ancestry, and attempted to contact maternal grandfather but never spoke with him. The agency then reported it prepared an ICWA-030 form using *only the information gathered from mother*. However, the agency had also been in contact with at least Z.P.'s adult sibling, maternal aunt K.P., and maternal cousin K.R, but it does not appear these family members were asked if they had any information about the family's Indian ancestry. The ICWA-030 did not list any aunts, uncles, siblings, or cousins even though the agency had names and contact information for the above-mentioned relatives. Instead, it noted, "NO INFORMATION AVAILABLE." We note that the agency also had contact information for maternal uncle M.H. All noticed tribes responded Z.P. was not ICWA eligible. At the six-month review hearing, the court found ICWA did not apply.

10.

Mother contends the agency's "failure to conduct a proper and adequate inquiry of Z.P.'s extended relatives *before* filing [an ICWA-030 form]" was prejudicial. We agree.

In *K.H.* and *E.C.*, we addressed ICWA error at the inquiry stage. There, we explained our decision not to follow the approaches articulated by other appellate courts for determining whether ICWA error requires reversal and concluded that the Supreme Court's decision in *A.R.* supplies the appropriate framework for assessing prejudice in this context. (*K.H.*, *supra*, 84 Cal.App.5th at pp. 607–608, citing *A.R.*, *supra*, 11 Cal.5th at pp. 252–254; accord, *E.C.*, *supra*, 85 Cal.App.5th at p. 152.) Applying the standards we articulated in *K.H.* and *E.C.*, as we will discuss below, we conclude the agency's error was prejudicial and remand for the agency to conduct a proper, adequate, and duly diligent inquiry is necessary.

### 2. The Agency and Juvenile Court Erred

As previously mentioned, when "a child is placed into the temporary custody of a county welfare [agency] …, the county welfare [agency] … has a duty to inquire whether [the] child is an Indian child. Inquiry includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled." (§ 224.2, subd. (b).) Extended family members include adult grandparents, siblings, brothers- or sisters-in-law, aunts, uncles, nieces, nephews, and first or second cousins. (25 U.S.C. § 1903(2); § 224.1, subd. (c).)

Here, the agency inquired only of mother and a maternal aunt when there were other extended family members to inquire of, which fell short of complying with the plain language of section 224.2, subdivision (b). There may be cases in which there is no one else to ask, but if that is so, the record must be developed to reflect that fact and supported by documentation. (Rule 5.481(a)(5).) "On a well-developed record, the court has relatively broad discretion [in such cases] to determine [that] the agency's inquiry

11.

was proper, adequate, and duly diligent on the specific facts of the case." (*K.H.*, *supra*, 84 Cal.App.5th at p. 589; accord, *E.C.*, *supra*, 85 Cal.App.5th at p. 157.) Accordingly, the juvenile court's finding that ICWA did not apply was not supported by substantial evidence, and its contrary conclusion was an abuse of discretion. (§ 224.2, subd. (i)(2).)

### 3.    Prejudice

"Where, as here, the deficiency lies with the agency's duty of […] inquiry and a juvenile court's related finding of 'proper and adequate further inquiry and due diligence' (§ 224.2, subd. (i)(2)), the error is one of state law ([*In re*] *Benjamin M.*, *supra*, 70 Cal.App.5th at p. 742). Under the California Constitution, '[n]o judgment shall be set aside, or new trial granted, in any cause, on the ground of misdirection of the jury, or of the improper admission or rejection of evidence, or for any error as to any matter of pleading, or for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice.' (Cal. Const., art. VI, § 13.)" (*K.H.*, *supra*, 84 Cal.App.5th at p. 606; accord, *E.C.*, *supra*, 85 Cal.App.5th at p. 151.)

" '[T]o be entitled to relief on appeal from an alleged abuse of discretion, it must clearly appear the resulting injury is sufficiently grave to manifest a miscarriage of justice' [citations], and California law generally interprets its constitutional miscarriage of justice requirement 'as permitting reversal only if the reviewing court finds it reasonably probable the result would have been more favorable to the appealing party but for the error.' " (*K.H.*, *supra*, 84 Cal.App.5th at pp. 606–607; accord, *E.C.*, *supra*, 85 Cal.App.5th at pp. 151–152.)

However, in *A.R.*, the Supreme Court "recognized that while we generally apply a *Watson*[7] likelihood-of-success test to assess prejudice, a merits-based outcome-focused test is not always appropriate because it cannot always adequately measure the relevant

---

[7]    *People v. Watson* (1956) 46 Cal.2d 818, 836.

harm.  [Citation.]  In other words, where the injury caused by the error is unrelated to an outcome on the merits, tethering the showing of prejudice to such an outcome misplaces the measure, at the expense of the rights the law in question was designed to protect." (*K.H.*, *supra*, 84 Cal.App.5th at p. 609, italics omitted.)

As we explained in *K.H.*, " 'ICWA compliance presents a unique situation .…' " (*K.H.*, *supra*, 84 Cal.App.5th at p. 608.)  "ICWA is not directed at reaching, or protecting, a specific outcome on the merits."  (*Id*. at p. 609; accord, *E.C.*, *supra*, 85 Cal.App.5th at p. 154.)  Rather, " '[t]he purpose of ICWA and related California statutes is to provide notice to the tribe sufficient to allow it to determine whether the child is an Indian child, and whether the tribe wishes to intervene in the proceedings' [citation], and an adequate initial inquiry facilitates the information gathering upon which the court's ICWA determination will rest."  (*K.H.*, at p. 608; accord, *E.C.*, at pp. 152–153.)  Yet, "while the appealing party is usually a parent, parents do not bear the burden of gathering information in compliance with ICWA [citations], and parents may raise the claim of error for the first time on appeal."  (*K.H.*, at p. 608; accord, *E.C.*, at p. 153.)  Further, the ultimate determination whether a child is an Indian child rests with the tribe, not with a parent, the agency, or the juvenile court.  (*K.H.*, at p. 590; accord, *E.C.*, at pp. 139–140.)  "[W]here the opportunity to gather the relevant information critical to determining whether the child is or may be an Indian child is lost because there has not been adequate inquiry and due diligence, reversal for correction is generally the only effective safeguard."  (*K.H.*, at p. 610, citing *A.R.*, *supra*, 11 Cal.5th at pp. 252–254; accord, *E.C.*, at p. 155.)

Here, the agency's inquiry " 'fell well short of that required to gather the information needed to meaningfully safeguard the rights of the tribes, as intended under ICWA and California law' " (*E.C.*, *supra*, 85 Cal.App.5th at p. 156, quoting *K.H.*, *supra*, 84 Cal.App.5th at p. 620), and "[a] finding of harmlessness on this record would necessarily require speculation and 'is at odds with the statutory protections that ICWA

and California law intend to afford Indian children and Indian tribes.' " (*E.C.*, at p. 155, quoting *K.H.*, at p. 611.) Therefore, the error is prejudicial and reversal is required.

Accordingly, the juvenile court's finding that ICWA does not apply is conditionally reversed and the matter is remanded. The juvenile court is instructed to ensure the agency conducts " 'a proper, adequate, and duly diligent inquiry under section 224.2, subdivision[s] (b) [and (e)], and document its inquiry in the record in compliance with rule 5.481(a)(5).' " (*E.C.*, *supra*, 85 Cal.App.5th at p. 157, quoting *K.H.*, *supra*, 84 Cal.App.5th at p. 621.) " 'This should not be interpreted as requiring an exhaustive search for and questioning of every living relative of [Z.P.]' but '[w]e leave that determination for the juvenile court in the first instance because it is better positioned to evaluate the evidence provided by the [agency]. So long as the court ensures the inquiry is reasonable and of sufficient reach to accomplish the legislative purpose underlying ICWA and related California law, the court will have an adequate factual foundation upon which to make its ICWA finding. (§ 224.2, subd. (i)(2).)' " (*E.C.*, at p. 157, quoting *K.H.*, at p. 621.)

## DISPOSITION

The juvenile court's finding that ICWA does not apply is conditionally reversed, and the matter is remanded to the juvenile court with directions to order the agency to comply with the inquiry and documentation provisions set forth in section 224.2, subdivisions (b) and (e), and rule 5.481(a)(5). If, after determining that an adequate inquiry was made consistent with the reasoning in this opinion, the court finds that ICWA applies, the court shall vacate its existing order and proceed in compliance with ICWA and related California law. If the court instead finds that ICWA does not apply, its ICWA finding shall be reinstated. In all other respects, the juvenile court's order is affirmed.

14.